IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LARRY SCHLEUSNER and PATRICIA SCHLEUSNER, husband and wife; and LARRY PAUL SCHLEUSNER and PATRICIA GLORIA SCHLEUSNER, as Trustees of The Larry and Patricia Schleusner Family Trust dated November 14, 2004,<br><br>Plaintiffs,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>Defendant. | CV 14–221–M–DWM<br><br>ORDER |

Pending before the Court are cross motions for summary judgment (Docs. 9, 21).[1] The company, Continental Casualty Company ("Continental") seeks summary judgment arguing that it is not obligated to provide insurance coverage in an underlying state case because notice was not timely given by the insured. Plaintiffs Larry and Patricia Schleusner ("Schleusners") filed a cross-motion for partial summary judgment seeking a declaration that Continental breached its duty to defend. For the reasons discussed below, Continental's motion is granted. The

---

[1] Plaintiffs filed a Combined Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Partial Summary Judgment (Doc. 21) but did not separately file a cross motion for partial summary judgment. The Schleusners' brief has been construed as a cross-motion.

1

Schleusners' motion is denied.

## BACKGROUND

**I.    The Policy**

Continental issued a claims-made-and-reported Real Estate Professional Errors and Omissions Policy (the "Policy") to RE/MAX Realty Consultants, LLC ("Re/Max") for the period September 6, 2007, to September 6, 2008.  (Doc. 2-4.) The Policy's insuring agreement states, *inter alia*, "[a] claim must be first made during the policy period and must be promptly reported to [Continental] in accordance with Section VI, Conditions, paragraph B." (*Id.* at 13.)  The Policy defines "claim" as

> an oral or written demand received by the Insured for money or services, including a demand alleging personal injury, arising out of an act or omission in the rendering of professional real estate services. The service of suit or the institution of an arbitration proceeding against the Insured will be considered a demand.

(*Id.* at 16.)  And regarding notice of claims to the insurer, the relevant portion of the Policy states:

> [t]he Insured, as a condition precedent to our obligations, must promptly give written notice to us during the policy period or any renewal policy period:
>
> > a. of any claim made against the Insured during the policy period;
> >
> > b. of any notice, advice or threat, whether written or verbal, that any person or organization intends to hold the Insured responsible for any alleged breach of duty or other act or omission.

. . .

> This condition will not be a barrier to coverage for those Insureds who do not have personal knowledge of a claim or potential claim. However all Insureds must promptly comply with this condition upon obtaining such knowledge.

(*Id.* at 20-21.)

On June 27, 2008, Re/Max was advised that the Policy was set to expire on September 6. (Doc. 11 at 10.) On August 28, 2008, Re/Max received a renewal invoice informing it that coverage under the Policy would terminate on September 6 if Re/Max did not renew it. (*Id.* at 10-11.) Re/Max did not renew the Policy. (*Id.* at 11.) The non-renewal automatically triggered the Policy's extended reporting period. This provision provides:

> As used herein, "extended reporting period" means the period of time after the end of the policy period for reporting claims by reason of an act or omission, which occurred prior to the end of the policy period and is otherwise covered by this Policy.
>
> A. Automatic "extended reporting period"
>
> If this Policy is canceled or non-renewed by either us or by you, we will provide an automatic, non-cancelable "extended reporting period" starting at the termination of the policy period if you have not obtained another policy of real estate agents professional liability insurance within sixty (60) days of the termination of this Policy. This automatic "extended reporting period" will terminate after sixty (60) days.
>
> . . .
>
> It is understood and agreed that the "extended reporting period" shall not be construed to be a new Policy and any claim submitted during such period shall otherwise be governed by this Policy.

(Doc. 2-4 at 23.) With this automatic extension, Re/Max's extended reporting period terminated November 5, 2008.

## II. The Underlying Lawsuit

On April 18, 2008, the Schleusners filed a state court action against Re/Max and one of its real estate agents, alleging damage as a result of Re/Max's conduct while acting as their real estate agents. (Doc. 10 at 5.) The Schleusners' counsel mailed written notice of the action and a copy of the complaint to Re/Max on November 4, 2008, and Re/Max received this notice on November 5. (Doc. 11 at 6.) According to the Schleusners, Judith Wahlberg, the former owner of Re/Max, reviewed the letter and complaint and sent the claim to Continental on November 5, 2008, the same day she received it. (Doc. 23 at 5.) Continental disputes that Wahlberg sent notice of the claim to Continental on November 5, 2008, asserting it first received notice of the Schleusners' claim on November 18, 2008, after the termination of the extended reporting period. (Doc. 11 at 6-7.) Plaintiffs contend this date is both disputed and immaterial. Continental declined coverage for the claim on November 21, 2008. (*Id.* at 7-8.) Whether the Schleusners chose to sue Re/Max with or without insurance was a tactical litigation choice.

The Schleusners settled their claims against the Re/Max real estate agent in October 2013 and against Re/Max in April 2014. (Doc. 2-2 at 4 & Doc. 2-1 at 4.) According to the settlement agreements, both Re/Max and its agent confessed to

entry of judgment against them in the amount of $2,191,828.90 and assigned their claims for coverage from any insurer to the Schleusners. (Doc. 2-1 at 1-2 & Doc. 2-2 at 1-2.) Judgment was entered accordingly and, on July 31, 2014, the Schleusners instituted this action for declaratory judgment in Montana state court. (Doc. 11 at 9.) Continental removed the case to this Court on September 9, 2014. (Doc. 1.)

## STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

## ANALYSIS

The interpretation of an insurance policy is a question of law. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). Courts will not rewrite clear and explicit language in an insurance contract. *Monroe v. Cogswell Agency*, 234 P.3d 79, 83 (Mont. 2010). The primary issue before the Court is one

of notice. "Notice provisions in insurance policies have been evaluated and considered by [the Montana Supreme Court] as far back as 1925." *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 150 (Mont. 2011) (citing *LaBonte v. Mut. Fire & Lightning Ins. Co.*, 241 P. 631, 635 (Mont. 1925)). Under Montana law, "a notice requirement in an insurance policy is a condition precedent, and failure to comply therewith will bar a recovery under the policy, unless the condition is waived by the company." *Id.* (internal quotation marks omitted). The timeliness of notice depends on the type of policy at issue, which can either be an occurrence or claims-made policy. Under an occurrence policy, coverage is triggered by events that occur during the policy period, even if a claim is not made until years later. *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002). Under claims-made policies, "coverage is determined by claims made within the policy period, regardless of when the events that caused the claim to materialize first occurred." *Id.*

Claims-made policies are further classified as either claims-made or claims-made-and-reported policies. Claims-made policies contain no requirement that the claim be reported by a set date, but in the case of claims-made-and-reported policies, "notice is the event that actually triggers coverage" and is generally required within the policy period or extended reporting period. *Id.* at 955-56 (discussing the difference between the two policy types). Both types of claims-

6

made policies were specifically developed to limit the insurer's risk by placing a temporal limitation on coverage. *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 688 (Cal. 1995), *as modified on denial of rehg.* (Aug. 31, 1995).

On its face, the Policy here is a claims-made-and-reported policy, conditioning indemnity and defense coverage on claims made during the policy period and reported prior to the expiration of the extended reporting period. Whether the claim was timely made turns on the question of whether the initiation of the lawsuit against Re/Max on April 18, 2008, constituted making a claim or whether a claim was initially made on November 5, 2008, when Re/Max first was made aware of the claim. Pursuant to the Policy, "[a] claim must be first made during the policy period." (Doc. 2-4 at 13.) The Policy defines "claim" as

> an oral or written demand received by the Insured for money or services, including a demand alleging personal injury, arising out of an act or omission in the rendering of professional real estate services. The service of suit or the institution of an arbitration proceeding against the Insured will be considered a demand.

(*Id.* at 16.) Relying on this definition, Continental asserts a "claim" requires that a demand for money or services be received by the insured and it must be received when the Policy is in effect. The Schleusners argue that the Policy "must be interpreted as allowing a claim to be first made at some time prior to when it is received by the insured." (Doc. 21 at 11.) This argument is not persuasive. Continental is correct. Pursuant to the plain language of the Policy in this case, a

7

claim was made on November 5, 2008, the day Re/Max received notice of the underlying lawsuit, not on April 18, 2008, when the underlying suit was initially filed.

This being so, it becomes necessary to decide whether a claim made during an extended reporting period, and not during the policy period, is timely. The Schleusners insist the Policy allows for claims to be first made during an extended reporting period. Continental maintains that because the Schleusners' claim was made during an extended reporting period and "following expiration of the Continental policy period, it is outside the scope of coverage provided by the Policy." (Doc. 10 at 12.) The Policy defines an extended reporting period as "the period of time after the end of the policy period for reporting claims by reason of an act or omission, which occurred prior to the end of the policy period and is otherwise covered by this Policy." (Doc. 2-4 at 23.) Additionally, the Policy states, "[a] claim must be first made during the policy period." (*Id.* at 13.) The clear language of these provisions indicates that in order to trigger coverage, a claim, as defined by the Policy, must be made on the insured within the policy period itself and not during an extended reporting period. Consequently, the claim in this case was not timely. It was made beyond the policy term.

The Schleusners look to the "personal knowledge" provision to argue that the notice requirements under the Policy are ambiguous. This provision holds that

8

the condition that the insured "must promptly give written notice to [Continental] during the policy period or any renewal policy period [] of any claim made against the Insured during the policy period" "will not be a barrier to coverage for those Insureds who do not have personal knowledge of a claim or potential claim. However all Insureds must promptly comply with this condition upon obtaining such knowledge." (*Id.* at 20-21.) The Schleusners are only partially correct.

"An insurance contract is ambiguous if it is 'reasonably subject to two different interpretations.' [Courts] determine whether an ambiguity exists from the viewpoint of a consumer with average intelligence, but untrained in the law or the insurance business. [Courts] construe ambiguities in an insurance contract against the insurer and in favor of extending coverage." *Modroo*, 191 P.3d at 395 (quoting *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003)). To the extent the personal knowledge provision makes the Policy ambiguous, it does so only in the context of the reporting provision, at most making the Policy as applied a claims-made policy, as opposed to a claims-made-and-reported policy. The personal knowledge provision can be reasonably interpreted to allow an insured to report a claim outside either the policy period or the extended reporting period as long as the insured "promptly" does so once it has personal knowledge. This interpretation, while construing the Policy in the light most favorable to the insured, does not make a claim filed after the termination of the policy period

9

timely. If it did, instead of turning the Policy into a mere claims-made policy, it would effectively turn it into an occurrence policy. The Court can not rewrite the Policy. *Monroe*, 234 P.3d at 83. Because the claim was not timely made, there is no coverage under the Policy as a matter of law, even if the report to the carrier inures to the insured's benefit regarding notice.

Because the condition precedent of a timely claim was not met, Continental had no duty to defend or to indemnify in the underlying state case. *See Steadele*, 260 P.3d at 150 ("[A] notice requirement in an insurance policy is a condition precedent, and failure to comply therewith will bar a recovery under the policy, unless the condition is waived by the company.") Additionally, in the absence of coverage, the Schleusners' bad faith claim also fails as a matter of law. *See Truck Ins. Exchange v. Wallers*, 828 P.2d 1384, 1388 (Mont. 1992) (holding that where there was no coverage, the bad faith claim failed as a matter of law). Continental's motion for summary judgment is granted.

## CONCLUSION

Accordingly, IT IS ORDERED that Continental's motion for summary judgment (Doc. 9) is GRANTED.

IT IS FURTHER ORDERED that the Schleusner's cross-motion for summary judgment (Doc. 21) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter

judgment in favor of the defendant and against the plaintiff and close this case.

Dated this 10th day of April, 2015.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT

11